John J. EUFEMIO, M.D., Appellant,
Cross–Appellee,

v.

**KODIAK ISLAND HOSPITAL, Lutheran
Hospital and Homes Society of Amer-
ica, Inc., Ron Brockman, M.D., Robert
Johnson, M.D., Appellees, Cross–Appel-
lants.**

Nos. S–4202, S–4260.

Supreme Court of Alaska.

July 24, 1992.

John Eufemio, pro se.

C.R. Kennelly, Stepovich, Kennelly & Stepovich, P.C., Anchorage, for appellant/cross-appellee.

Ronald L. Bliss, Jean E. Kizer, Bradbury, Bliss & Riordan, Anchorage, for appellees/cross-appellants.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

John J. Eufemio, M.D., was denied renewal of his staff privileges at Kodiak Island Hospital (KIH) in 1982. He reapplied in 1985 and was again rejected. He then filed suit in the superior court seeking damages and injunctive relief against KIH. He appeals the superior court's grant of summary judgment in favor of KIH. KIH cross-appeals on the issue of whether Eufemio's complaint was timely filed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

John J. Eufemio, M.D., practiced as a general surgeon in Kodiak with staff privileges at KIH, an acute care facility managed by Lutheran Hospital and Homes Society of America, Inc. (LHHSA), from 1966 until 1980. In 1979, KIH suspended Eufemio's orthopedic and hand surgery privileges. KIH revoked the suspensions in 1980 after concluding that it had not followed proper procedures.

Eufemio left Kodiak in the fall of 1980 to attend law school. He reapplied for annual staff privileges in 1981 and 1982.[1] The executive committee notified Eufemio in October 1982 that his application for staff privileges for 1982 was denied.

Following a hearing in which Eufemio participated, the Hearing Committee agreed with the executive committee. Eufemio appealed to the ARC, which recommended affirmance of the denial of Eufemio's staff privileges. The LHHSA board issued a final decision affirming the denial of privileges on June 26, 1984.

In 1984–85, Eufemio completed a surgical fellowship at the New York Medical Center and regained his eligibility to take the surgical boards. Eufemio returned to Kodiak in the summer of 1985 and again applied for appointment to the medical staff. The executive committee recommended denial. The Hearing Committee considered the executive committee's decision early in 1986, and in March recommended denial of Eufemio's application. Eufemio appealed to the ARC, which recommended that the LHHSA board deny Eufemio staff privileges.

On June 18, 1986, before the LHHSA board made its final decision, Eufemio commenced this suit against KIH, LHHSA and three Kodiak physicians who participated in the peer review process, alleging three

---

[1] Under Alaska law, medical and surgical privileges for each member of a hospital's medical staff are reviewed annually. 7 Alaska Administrative Code (AAC) 12.110(c)(1). The hospital medical staff must review its own members and make recommendations to its governing body regarding renewal of staff privileges. The governing body must also establish procedures for appeals of these decisions. 7 AAC 12.630(b)(5).

KIH's reappointment process is governed by its bylaws and a fair hearing plan (FHP). The FHP was adopted in 1983 and applied to Eufemio's hearing held in November 1983. According to the bylaws, a physician's completed application is filed with the hospital administrator and first considered by the executive committee of the medical staff. If the executive committee recommends denial of staff privileges, the applicant may request a hearing before the Hearing Committee, in accordance with the FHP. The Hearing Committee presents its recommendations back to the executive committee, which then presents its final recommendation to the LHHSA board of directors. The board then appoints an appellate review committee (ARC) of at least three members. The ARC may recommend that the board affirm, modify or reverse the executive committee, or may refer the matter back to the Hearing Committee. The LHHSA board makes the final decision.

counts of constitutional claims, noting due process and civil rights violations, as well as two counts sounding in tort and one in contract. Eufemio sought damages and injunctive relief. KIH moved for summary judgment, asserting that Eufemio's complaint was improperly pled as an original action, that Eufemio had failed to exhaust the hospital's internal remedies, and that judicial review of the denial of his 1982 application was time-barred. At argument Eufemio withdrew his request for injunctive relief and reduced his complaint to his contract and constitutional claims. Also at argument the superior court ruled that Eufemio could not appear both with counsel and as a pro per litigant. Moreover, the count ruled that Eufemio's law partner, George Vogt, could not represent Eufemio.

In its first order, the superior court granted summary judgment against Eufemio's constitutional claims for failure to exhaust administrative remedies and rejected Eufemio's argument that KIH was estopped from denying Eufemio staff privileges. The court ruled that Eufemio's claims were not time-barred and that genuine issues of material fact regarding his contract claim precluded summary judgment. Following a clarification of the issues, the superior court indicated that only one minor contract issue was still before the court. Eufemio and KIH stipulated to entry of a final judgment which preserved the remaining contract issue, should Eufemio prevail in this appeal.

Eufemio appeals the limitation on his representation and the granting of summary judgment against both the contract and constitutional issues. KIH cross-appeals the decision that Eufemio's claim with respect to his 1982 application was not time-barred.

## II. DISCUSSION

### A. STATUTE OF LIMITATIONS

■ KIH cross-appeals the superior court's refusal to bar Eufemio's appeal of his 1982 application on the ground that it

was not timely filed. KIH maintains that since complaints from decisions of a hospital peer review process are akin to administrative determinations and arbitration, we should impose a statute of limitations of 30 or 90 days.

Eufemio argues that since his claims sound in contract, the applicable statute of limitations should be two or six years. He further argues that the delay in filing the suit did not prejudice KIH.

This question has been addressed by courts in other jurisdictions. *See, e.g., Stringer v. Board of Trustees of Edward M. Sparrow Hospital,* 62 Mich.App. 696, 233 N.W.2d 698, 699–701 (1975); *Edwards v. Fresno Community Hospital,* 38 Cal. App.3d 702, 113 Cal.Rptr. 579, 580–82 (1974); Debra T. Landis, Annotation, *What Statute of Limitations Governs Physician's Action for Wrongful Denial of Hospital Privileges,* 3 A.L.R.4th 1214 (1981). Generally, the applicable statute of limitations will depend on the nature of the right sued upon, not the form of the action or the relief demanded. *Edwards,* 113 Cal.Rptr. at 580. The California court applied its miscellaneous tort, contract and quasi-contract statute of limitations of two years. *Id.* at 581–82 (choosing the two year limitations period because hospital privileges were considered a property and not a personal right). The Michigan court applied its three year statute of limitations applicable to injuries to persons or property. 233 N.W.2d at 700–01 (choosing it over a six year omnibus statute). Neither court considered the statute of limitations applicable to appeals from administrative hearings or arbitration decisions.

We believe that the 30 or 90 day statute of limitations is not appropriate. Because Eufemio's claim arises out of his contractual relationship with KIH, AS 09.10.050 is appropriate. Thus, Eufemio had six years in which to file a suit contesting the denial of his 1982 application. *See* AS 09.10.050. The decision on the 1982 application was issued on June 26, 1984. Eufemio filed the present action on June 18, 1986.[2] The com-

2. The superior court noted that Eufemio filed suit on June 17, *1984.* This error does not affect the holding that the complaint was timely filed.

plaint was timely filed.[3]

The parties do not contend that the 1985 application raises any new issues pertinent to this appeal. Thus we find that it is unnecessary to consider the denial of the 1985 application.

## B. EXHAUSTION OF REMEDIES

The superior court granted summary judgment against Eufemio on his due process claims[4] on the ground that Eufemio failed to properly raise the issues before the ARC for both the 1982 and 1985 denials. Thus he could not seek judicial review on these issues because he failed to exhaust the remedies provided by the bylaws. The superior court noted that although Eufemio had stated his objections in general terms in his letters of appeal, the objections were not sufficiently detailed, as required by the bylaws, to raise the issues.

### 1. Standard of Review.

It is within the superior court's discretion whether to require the exhaustion of administrative or organizational remedies before reviewing an issue or claim. *Standard Alaska Prod. Co. v. State, Dep't of Revenue*, 773 P.2d 201, 206 (Alaska 1989).

Thus, we must determine whether the superior court abused its discretion. *Morgan v. State, Dep't of Revenue*, 813 P.2d 295, 297 n. 4 (Alaska 1991). We "will reverse a ruling for abuse of discretion only when left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling." *Id.* Also, the superior court's determination that a party did not exhaust the administrative remedies is subject to an abuse of discretion analysis. *Id.* However, because the superior court granted summary judgment on these issues, we may reverse that decision if, considering all inferences from the evidence in favor of Eufemio, genuine issues of material fact exist. *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 116 (Alaska 1990).

### 2. The Requirement of Exhaustion of Remedies.

In *Eidelson v. Archer*, 645 P.2d 171, 177 (Alaska 1982), we held that the doctrine of exhaustion of remedies was applicable to the judicial review of cases involving the loss of a physician's hospital privileges.[5] In applying the doctrine, a court must decide the following: 1) is exhaustion of remedies required; 2) did the complainant exhaust those remedies; and 3) is the failure

---

**3.** In the alternative, KIH argues that Eufemio should be held to his election of remedies. That is, his choice of reapplying in 1985 precludes his contesting the denial of his 1982 application. However, KIH has offered no support and little discussion of the doctrine of election of remedies in its brief. It argues only that without the "election" doctrine "needless, burdensome and very expensive duplication of procedures" will occur. We do not believe that KIH has presented compelling reasons for holding Eufemio to an election of remedies.

**4.** Eufemio's allegations of inadequate procedural due process include the following: he claims that the FHP did not allow for sufficient time to review the materials used against him, that he was denied the right of cross-examination, that the denial of staff privileges was arbitrary, capricious and founded on improper motives, that the tribunal was not impartial, and that his 1985 application was not reviewed on its own merits.

Generally, a public or quasi-public hospital is required to afford its physicians procedural due process in determining suspension or termination of hospital staff privileges. *Storrs v. Lutheran Hosp. and Homes Soc'y of America,*

*Inc.,* 609 P.2d 24, 28 (Alaska 1980). At a minimum, a public hospital's hospital peer review appeal process must afford an applicant an ample opportunity to confront witnesses and present evidence before an impartial tribunal. *McMillan v. Anchorage Community Hosp.*, 646 P.2d 857, 867 (Alaska 1982).

In this case Eufemio assumes and KIH does not dispute that KIH is a quasi-public hospital. The superior court, noting that neither the parties nor the record before the court indicated that KIH should not be held to the constitutional standards, would have reviewed the procedural adequacy of KIH's appeal process.

**5.** This is the first case dealing with the hospital peer review decision to deny *renewal* of hospital privileges. Prior cases dealt with suspension and termination of privileges. *See, e.g., McMillan v. Anchorage Community Hosp.*, 646 P.2d 857, 858 (Alaska 1982); *Eidelson*, 645 P.2d at 176; *Storrs v. Lutheran Hosp. and Homes Soc'y of America, Inc.*, 609 P.2d 24, 25 (Alaska 1980). We do not believe that the distinction between suspension, termination and denied renewal is significant in applying the doctrine of exhaustion of remedies.

to exhaust remedies excused? *Id.* at 175–83.

### a. *Was exhaustion of remedies required?*

In deciding whether to require exhaustion of remedies in a particular case, a court should "balance the interest in allowing the hospital to apply its special competence and expertise, correct its errors, develop a proper record, and discourage deliberate flouting of its processes with [the doctor's] interest in the availability of adequate redress for [the doctor's] grievances." *Eidelson,* 645 P.2d at 177.

KIH contends that the superior court properly required exhaustion of the hospital peer review process. It contends that the hospital's interest in correcting its own errors survives because the hospital should be given the opportunity to avoid costly litigation. KIH also maintains that it has an interest in applying its special expertise because medical qualifications were at issue.

Eufemio contends that exhaustion should not have been required. He claims that there is no need in this case for deference to hospital expertise because his objections are due process objections, that is, they are issues requiring the special competence of the courts, not a medical staff. Eufemio also claims that the interest in creation of a record is not threatened in this case because a voluminous record has already been compiled. Furthermore, Eufemio argues that it is in the interests of judicial economy not to require exhaustion because

the hospital cannot award Eufemio damages, the remedy he seeks. Lastly, Eufemio contends that the exhaustion requirement is a harsh rule that should be applied only in the most egregious cases. He argues that although the requirement may be appropriate where the internal review process is ignored completely, application is not warranted in this case where the appeal process was pursued, but the court found that one issue was insufficiently raised. To support this contention, Eufemio notes that in other Alaska cases in which exhaustion has been required, the internal review process was not pursued at all.[6]

Applying the balancing test required by *Eidelson,* KIH has a significant interest in an exhaustion requirement. KIH's strongest interest is in correcting its own errors and in discouraging the deliberate flouting of its processes.[7] Even though due process is not within a hospital peer review committee's "special competence," it is still possible for such a committee to identify unfair or arbitrary processes, such as a biased tribunal, and correct the deficiency to avoid litigation.

On the other side of the balance, Eufemio's interest in the availability of redress for his grievances is not significantly threatened by requiring exhaustion. The classic example of the exhaustion requirement hindering one's ability to seek redress is when "immediate judicial intervention [is] necessary to insure adequate protection." *Eidelson,* 645 P.2d at 178. Here, however, Eufemio was pursuing other issues, including his tort, promissory estop-

---

6. Eufemio argues that *Eidelson* is not relevant to this case because the doctor in *Eidelson* did not pursue the hospital peer review appellate process at all, but contested his suspension directly in court. However, the cases which have interpreted *Eidelson* confirm that the case enunciates a general doctrine of exhaustion and should not be limited to its facts. *See, e.g., Standard Alaska Prod.,* 773 P.2d at 207; *Reed v. Municipality of Anchorage,* 741 P.2d 1181, 1186 (Alaska 1987).

7. We agree with Eufemio that the other two potential hospital interests, applying its own expertise and creating a record, are not threatened in this case by a direct appeal to the courts. The points which the superior court found had

not been exhausted were the due process claims, not any disagreements with the findings of the executive committee. Thus, the executive committee's ability to analyze medical qualifications is not in question here. Instead, the relevant issue is the manner in which the committee operates. *See Garrow v. Elizabeth General Hosp. and Dispensary,* 79 N.J. 549, 401 A.2d 533, 543–44 (1979) (Pashman, J. concurring in part and dissenting in part) (arguing that due process issues require no hospital expertise or detailed factual record). *See also* Karen A. Aviles, Note, *Eidelson v. Archer: Exhaustion of Remedies in a Private Hospital,* 1 Alaska L.Rev. 277, 280–83 (1984) (applying Justice Pashman's reasoning in *Garrow* to *Eidelson* ).

pel and breach of contract claims, as well as arguing the merits of LHHSA's decision. Eufemio's appeal was in the form of a letter to the ARC, not an unduly burdensome process. The availability of adequate redress for Eufemio was not affected by the superior court's requirement that he exhaust the hospital review process.

Thus, the *Eidelson* balance favors KIH. We are not left with a definite and firm conviction that the superior court was in error in requiring exhaustion of remedies, nor do genuine issues of material fact exist.[8]

b. *Did Eufemio exhaust his remedies?*

■ With respect to the second inquiry, we have required at least a "good faith effort" to pursue the grievance internally. *Casey v. City of Fairbanks*, 670 P.2d 1133, 1136–37 (Alaska 1983). Eufemio argues that he made a good faith effort to resolve his grievances internally. KIH argues that Eufemio did not adequately pursue the appeal process provided by the bylaws, but made only a perfunctory effort.

The internal remedy which Eufemio allegedly did not adequately pursue was the LHHSA Appellate Hearing which was to have been conducted in Fargo, North Dakota. According to the Fair Hearing Plan:

> The practitioner seeking the review shall submit a written statement detailing all matters with which he disagrees, and his reasons for such disagreement. If it is the practitioner's position on appeal that the action of the Medical Staff Executive Committee, the Hearing Committee or any other committee of the Medical Staff was arbitrary or capricious ... then the written statement shall contain a detailed statement of the basis upon which said claims are made. In addition, if it is practitioner's position that he was denied a hearing as provided under the Medical Staff Bylaws or this Plan, specific reference shall be made to the provision of the Medical Staff Bylaws or this Plan which, the practitioner contends, were violated and the precise nature of the alleged violation.

Eufemio's letter appealing the denial of his 1982 application was not specific on the constitutional or contract claims. He did not make specific reference to a provision of the bylaws or the FHP or detail the precise nature of the violation.

However, we believe that Eufemio's efforts were adequate under the circumstances. Eufemio's letter of appeal to the ARC raised his general constitutional objections and contract claims in the sections under the headings "Arbitrary and Capricious Hearing" and "Ethics." None of Eufemio's contentions of impropriety in the letter of appeal were new, but had been argued in full before the Hearing Committee. The records of those hearings were before the ARC.

Proof of Eufemio's good faith effort was the ARC's decision to address these issues without comment on their procedural or substantive adequacy. Although Eufemio did not detail his objections in the precise manner specified by the Fair Hearing Plan, he complied sufficiently for the ARC to respond. The ARC found that the Hearing Committee's actions were "based on substantial evidence and [were] not arbitrary

---

**8.** Eufemio's argument raises the general question whether exhaustion of remedies should be required for constitutional questions. We have held that exhaustion of remedies is not required when the constitutionality of a statute or bylaw is the *only* issue raised in the case. *Ben Lomond, Inc. v. Municipality of Anchorage*, 761 P.2d 119, 122 (Alaska 1988). However, "exhaustion may be required when non-constitutional issues are present or when a factual context is needed for deciding the constitutional issues." *Ben Lomond*, 761 P.2d at 122 (citing 4 Kenneth Culp Davis, *Administrative Law Treatise* § 26:6, at 435 (2d ed. 1983)). *Accord Standard Products*, 773 P.2d at 207–08. We have emphasized

that a court should not "entertain 'legal' or 'constitutional' claims which have been severed from the remainder of a controversy otherwise subject to the doctrine of administrative exhaustion." *Standard Products*, 773 P.2d at 207.

Although each of Eufemio's issues may be characterized as legal determinations, and thus not within the specialized expertise of the hospital, they necessarily involve resolution of the factual context in which Eufemio was denied privileges. They each require some analysis of the legitimacy of the executive committee's determination. Thus, the requirement of exhaustion of remedies was not foreclosed as a matter of law.

and capricious or based on nonprofessional motives." The ARC further found that Eufemio was given a fair hearing in accordance with the FMP. Thus the letter of appeal was not so vague that a response was not possible. The ARC waived any objection to the form of the written statement by reaching decisions on the issues. KIH cannot now claim that issues on which it was able to reach a decision were not properly raised in the administrative appeal. Therefore we hold that Eufemio exhausted available internal remedies with respect to both his contract and constitutional claims.

3. Was exhaustion of remedies excused?

Eufemio also claims that the exhaustion requirement should be excused because pursuit of the internal remedial process would have been futile. Because we find that Eufemio adequately exhausted this process we need not address whether exhaustion was excused.

## C. FORM OF REVIEW

██ Eufemio's action was a civil suit for damages.[9] The superior court ultimately dismissed Eufemio's contract issues because it concluded that a civil suit was not procedurally appropriate. The superior court explained that Eufemio's contract issues should have been "properly raised in an 'appeal' to the court because challenges to [a] hospital review process [are] treated as an administrative appeal."[10]

The issue is whether the judicial review of allegations of breach of a hospital staff privileges contract must necessarily be in the form of an appeal of an administrative decision rather than in an original civil action.[11] We must first decide if there is only one proper *form* of review before we can decide whether "judicial review" contemplates any level of deference.[12]

We have stated before that in certain circumstances it is unnecessary to make the distinction between an original civil action and an appeal to the superior court for the purposes of the form of review. *Winegardner v. Greater Anchorage Area Borough,* 534 P.2d 541, 545 (Alaska 1975). *See also Alaska Interstate v. Houston,* 586 P.2d 618, 619 n. 3 (Alaska 1978) (noting that an appeal from a workers compensation board decision should not be dismissed merely because it was titled as a complaint). Even in exercising its appellate jurisdiction, the superior court has leeway to shape the form of the review. A proceeding before the superior court arising from the conduct of an internal review body, such as a governmental agency or a private appellate committee, may take various forms. A superior court may be faced with choosing among the following alternatives, depending on the circumstances: (1) reviewing the record for an abuse of discretion or error of law; (2) trial de novo on the

9. Eufemio's claim for injunctive relief was abandoned.

10. KIH contends that the superior court was correct. It maintains, citing *McMillan v. Anchorage Community Hosp.,* 646 P.2d 857, 860 (Alaska 1982), that the proper appellate procedure is limited to the following: 1) review of the hospital bylaws for substantive and procedural due process; and 2) review of claims that the bylaws were not followed. KIH contends that if the court finds that the peer review process is flawed, it should direct the hospital to comply, and only then permit a civil suit for damages. However, this procedural method was used *by stipulation* in *McMillan* and we are not required to employ it in this case. *See McMillan,* 646 P.2d at 860.

11. This issue is a question of law to which this court applies its independent judgment. *Jack-*

*son v. Power,* 743 P.2d 1376, 1379 n. 5 (Alaska 1987).

12. Any judicial inquiry into the compliance with contractual provisions will not be a review of the "merits" of the hospital's decision but of the process. Even the authority cited by KIH allows for judicial review of the process used. *See, e.g., Lew v. Kona Hosp.,* 754 F.2d 1420, 1425 (9th Cir.1985). This is true even with respect to private hospitals. *Shulman v. Washington Hosp. Center,* 222 F.Supp. 59, 63 (D.D.C.1963) (holding that a private hospital is not subject to judicial review except when an allegation of a failure to conform to procedural requirements set forth in the hospital's bylaws is made: "the extent of judicial review is to require compliance with the prescribed procedure. Beyond that, the courts do not interfere.").

record; and (3) trial de novo in whole or in part.

The second alternative involves the superior court exercising its independent judgment without deference to the reviewing body's determinations. In such cases, the superior court may use only the compiled record, or the compiled record augmented as necessary. Alaska R.App.P. 609(b)(1). This procedure is usually applied when the reviewing body's procedures are found to be inadequate. *State v. Lundgren Pacific Constr. Co.*, 603 P.2d 889, 896 & n. 18 (Alaska 1979).

Under the third alternative, the court may determine that certain issues are not within the reviewing body's expertise, or that the present record is inadequate. In such cases, the court has discretion to take additional evidence and determine issues anew. Alaska R.App.P. 609(b)(1). *See State v. Dupere*, 721 P.2d 638, 639 (Alaska 1986) (noting the superior court's discretion to order a trial de novo in the review of a governmental agency determination); *Lundgren Pacific*, 603 P.2d at 892–94 (noting that "a person may have a right to a trial de novo of certain matters under some circumstances even though Rule 45 [now Appellate Rules 602 and 604] is applicable"). The court may also recognize that certain issues are within the expertise of the reviewing body and determine that these issues should be reviewed on the record.

We have not before determined that a proceeding arising from the decision of a hospital peer reviewing body must be brought as an administrative appeal or face dismissal. At most we have simply approved of specific cases being treated by the parties as appeals from an administrative agency. *See McMillan v. Anchorage Community Hosp.*, 646 P.2d 857, 860 (Alaska 1982). In another case in which damages were sought, based on an alleged failure to adhere to the hospital bylaws, we declined to consider evidence which was not part of the administrative record. *Storrs v. Lutheran Hosp. & Homes Soc'y of America, Inc.*, 609 P.2d 24, 30 n. 19 (Alaska 1980). Despite KIH's contentions, there

is no indication in *Storrs* that the superior court could not have disposed of the damages issue in the same action.

Other jurisdictions have allowed as an original civil action a suit for breach of contract based on the hospital bylaws. *See, e.g., Terre Haute Regional Hosp., Inc. v. El–Issa*, 470 N.E.2d 1371, 1373–74 (Ind. App.1984) (jury trial for damages). There is no general prohibition on original civil actions to contest a breach of hospital bylaws. The only issues limited to a review of the administrative decision are those which touch on the merits, that is, the qualifications of the applicant and the factual findings of the hospital. "It is when the physician simply claims that the hospital decision to exclude him was factually incorrect that the court serves as a reviewing body." Note, *Denial of Hospital Staff Privileges: Hearing and Judicial Review*, 56 Iowa L.Rev. 1351, 1376 (1971).

Therefore, because the form of review may have limited substantive effect, we see no reason to dismiss Eufemio's contract claims merely because they were brought as an original civil action. Breach of contract claims, and other claims which look at the validity of the hospital's review processes and not at those findings within the special expertise of the hospital, need not be framed as an appeal from an administrative decision.

## D. PROMISSORY ESTOPPEL

■ The 1982 decision of the KIH Hearing Committee contained the following language:

None of the problems which resulted in the denial of his medical staff privileges appear to be irreparable, but they provided sufficient cause for the medical staff's decision. We support that decision, but we also encourage Dr. Eufemio to pursue his stated goal of obtaining additional residency training and his surgical board certification. We speculate that a year's additional training in a structured setting, surrounded by examples of current good medical and surgical practice, would substantially improve his qualifications for medical staff membership.

In 1984–85, Eufemio received further medical training in New York and received his surgical board certification. Eufemio now claims that his privileges should be reinstated based on promissory estoppel. He claims that KIH is estopped from denying him staff membership based on the hearing committee's decision which anticipated that his qualifications would be "substantially improved." Eufemio claims that, at minimum, the committee promised him that his application would be reviewed anew.

We will apply promissory estoppel if:
1) The action induced amounts to a substantial change in position;
2) it was either actually foreseen or reasonably foreseeable by the promisor;
3) an actual promise was made and itself induced the action or forbearance in reliance thereon; and
4) enforcement is necessary in the interest of justice.

*Crook v. Mortenson–Neal*, 727 P.2d 297, 300–01 (Alaska 1986). The superior court granted summary judgment, finding as a matter of law that there was neither a promise made nor action induced. We agree.[13]

We are not persuaded that even with the factual inferences favoring Eufemio, the hearing committee's language indicates a promise. Rather, the decision plainly indicates that the committee merely "speculated" about what effect the additional training would have on Eufemio's qualifications. Similarly, the hearing committee noted that attending the training was already Eufemio's "stated goal." Eufemio, who was already planning on obtaining the additional training, cannot argue that his attendance was induced by the hearing committee's recommendation.[14]

### E. EUFEMIO'S APPEARANCE PRO PER AND WITH CO-COUNSEL

■ The trial court held that 1) Eufemio could either represent himself or be represented by counsel, but not both; and 2) counsel could not be a member of the same law firm as Eufemio. Eufemio contests both holdings.[15]

Although ordinarily these questions are straightforward, they are confusing here because of Eufemio's many roles. He is party, pro per litigant, attorney, law partner and witness. Originally Eufemio was represented by C.R. Kennelly. Later, George Vogt, Eufemio's law partner, appeared as co-counsel. Finally, Eufemio signed a memorandum to the court himself. Eufemio, however, never entered an order of substitution.[16]

13. Summary judgment was granted on this question. Thus, "this court must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment on the law applicable to the established facts. All reasonable inferences of fact from proffered materials must be drawn against the moving party ... and in favor of the non-moving party...." *Sea Lion Corp. v. Air Logistics of Alaska, Inc.*, 787 P.2d 109, 116 (Alaska 1990) (citation omitted).

14. Eufemio is not entitled to either the granting of staff membership or a new review of his application. It is notable, however, that the 1985 hearing was not merely a repeat of the 1982 hearing. New evidence, such as Eufemio's new licensing and training, was considered by the executive committee. However, the executive committee's decision was based on the old allegations. "The records submitted to this committee did indicate a possibility that Dr. Eufemio has made an effort to correct his deficiencies in two areas—competence and medical records.... It is the judgement of this committee that for reasons set forth below the *other* deficiencies of Dr. Eufemio are so fundamental

as to preclude reappointment to the medical staff." (Emphasis added). The Hearing Committee then limited its review to whether these old allegations were adequate grounds for denial.

15. "A trial court's decision concerning a motion to disqualify opposing counsel will only be reversed when it constitutes an abuse of discretion." *Munn v. Bristol Bay Housing Auth.*, 777 P.2d 188, 196 (Alaska 1989).

16. Eufemio's situation is the stuff of which television shows are made, as evidenced by this exchange between counsel and the court:

[Counsel]: Your Honor, just as a side point, not that it has any bearing on it, but I was watching a TV program last night, L.A. Law, and some lawyer, some famous plaintiff lawyer was being sued, and in that case I would suppose the people that researched that transcript knew what they were doing because they had him both as a witness, a party and acting on his own behalf, and also having another counsel from his own firm represent-

The court based the first holding on Alaska Civil Rule 81(c) which provides: "Except as otherwise ordered by the court, a party who has appeared by an attorney may not thereafter appear or act in his own behalf in any action or proceeding, unless order of substitution shall have been made by the court after notice to such attorney." Alaska R.Civ.P. 81(c).

Eufemio argues that the rule did not contemplate the situation where the party was also an attorney. Eufemio claims that since this rule was to protect the lay litigant, it serves no purpose to apply it to a pro per litigant who is also an attorney.

The rule makes no distinction on its face between lawyers appearing pro per and lay persons appearing pro per. Although there may not be a compelling reason for applying this rule to a lawyer appearing pro per, we conclude that the superior court did not abuse its discretion. The court reasoned:

> I think one of the purposes behind Rule 81 is to avoid a whipsawing of the other side, and a song and dance around procedure and around rules and around responsibility; well, I know that interrogatory says that but I didn't sign that, that was somebody else who signed that, the party or the attorney or whatever.

We affirm the superior court on this holding.

■ The superior court based its second holding on Disciplinary Rule 5–102 of the Code of Professional Responsibility, which requires withdrawal of a lawyer if a lawyer in his or her firm ought to be called as a witness. Code of Prof.Resp. DR 5–102. Thus, read literally, Vogt should be disqualified.

The Supreme Judicial Court of Massachusetts has held that Disciplinary Rule 5–102 does not prevent a lawyer from representing his law partner in litigation. *Borman v. Borman*, 378 Mass. 775, 393 N.E.2d 847, 856 (1979). The *Borman* court reasoned:

> To apply DR 5–102 when the testifying advocate is a litigant in the action miscomprehends the thrust of the rule. DR 5–102 regulates lawyers who would serve as counsel and witness for a party litigant. Any perception by the public or determination by a jury that a lawyer litigant has twisted the truth surely would be due to his role as litigant and not, we would hope, to his occupation as a lawyer. As a party litigant, moreover, a lawyer could represent himself if he so chose. Implicit in the right of self-representation is the right of representation by retained counsel of one's choosing. A party litigant does not lose this right merely because he is a lawyer and therefore subject to DR 5–102. Consequently, [the party litigant's law partnership] cannot be disqualified simply because the husband, as a party litigant, will testify.

*Id.* (citations, footnote omitted). We agree with this rationale and believe that the superior court abused its discretion in disqualifying Vogt.[17]

ing him in the case. Not that that's precedent, but I thought it might be interesting, coming up the night before this argument.

THE COURT: Well, I must share with you, [Counsel] that I do find that more interesting than persuasive. Thank you.

17. The Code of Professional Responsibility should not be used as an offensive pretrial maneuver. As the *Borman* court stated:

Notwithstanding the purposes served, application of the rule may have harsher consequences for the client than the continued service of the attorney. Most obviously, the rule may deny a litigant of the right to counsel of his choice. When disqualification occurs after employment has begun, it temporarily (and possibly permanently) disables the litigant in his effort to prosecute a claim or mount a defense. It is not surprising therefore that the code has been used increasingly as a catalog of pretrial tactics. When needless disqualification occurs as a result of these tactics, the very rules intended to prevent public disrespect for the legal profession foster a more dangerous disrespect for the legal process. We therefore take this opportunity to state that first and foremost, the code is self-executing. We expect lawyers to know and comply with its provisions. If an attorney is unsure whether in a given case his conduct violates the code, he should terminate the questionable conduct or seek the advice of the appropriate Committee on Ethics and Professional Responsibility. If he persists in questionable conduct, he risks disciplinary action including disbarment. When a lawyer, exercising his best judgment, deter-

### III. CONCLUSION

The superior court's grant of summary judgment to KIH on the issue of exhaustion of remedies is reversed. The superior court also erred in precluding review of the contract claims in an original civil action. The superior court correctly granted summary judgment for KIH on the promissory estoppel issue. On remand, Mr. Vogt should be allowed to appear as Eufemio's counsel, although Eufemio cannot both represent himself and appear with co-counsel.

AFFIRMED in part, REVERSED in part, and REMANDED for further consideration.

mines that his employment will not bring him into conflict with the code, disqualification may occur only if the trial court determines that his continued participation as counsel taints the legal system or the trial of the cause before it.

393 N.E.2d at 855 (citations, footnotes omitted).