Marlin J. BROECKEL, Appellant,

v.

STATE of Alaska, DEPARTMENT OF CORRECTIONS, Frank J. Prewitt, Jr., Commissioner of the Department of Corrections, Arthur Schmidt, Superintendent of the Palmer Correctional Center, each in their official capacity, Appellees.

No. S–7131.

Supreme Court of Alaska.

June 20, 1997.

Marlin J. Broeckel, pro se.

Marilyn J. Kamm, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellees.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

*OPINION*

FABE, Justice.

## I. *INTRODUCTION*

Marlin J. Broeckel, an inmate at the minimum security facility at Palmer Correctional Center (PCC), sued the Alaska Department of Corrections, its commissioner, and the superintendent of PCC for breach of contract. The superior court denied motions to add Broeckel's wife as a plaintiff and dismissed Broeckel's claims for failure to exhaust administrative remedies. We affirm the superior court's decision.

## II. *FACTS AND PROCEEDINGS*

On July 19, 1994, Broeckel submitted to PCC officials a "Prisoner Personal Property

Inventory" form requesting permission to receive certain computer equipment, including a scanner. The State concedes that an officer at PCC circled "approved" on the request form.[1] However, it asserts that the officer failed to realize that the form included a request for a scanner because that request was on the back of the form.

Based upon this "approval," Broeckel's wife borrowed an undisclosed amount from the National Bank of Alaska. Then, on approximately August 30, she purchased a scanner from an Anchorage computer supplier. A few days later, Broeckel received the scanner at PCC.

On September 28 prison authorities ordered Broeckel to surrender the scanner. Broeckel did so under protest and gave the scanner to his wife. Broeckel's wife was unable to obtain a refund from the scanner's supplier and has no use for a scanner of her own.

The Department of Corrections has an inmate grievance procedure that consists of four levels. At Level One, an inmate attempts to resolve his grievance informally with the prison's staff. Formal grievance procedures begin at Level Two. At that level, the prisoner grievance coordinator assigns a grievance investigator to make findings and recommendations. The coordinator must issue a written determination within ten working days after receiving the inmate's formal grievance. Level Three permits the inmate to appeal the Level Two decision to the prison superintendent. The superintendent must review the grievance, the coordinator's decision, and the investigator's report and issue a written decision within five working days. Finally, the inmate may appeal the superintendent's decision to the Regional Director. Within fifteen working days, the Regional Director must review all of the materials assembled throughout the prior three procedural levels and issue a final decision.

Broeckel informally sought to have PCC reimburse him for the cost of the scanner. Although these informal measures were unsuccessful, he never lodged a formal grievance. Instead, he sued the Department of Corrections, its then-Commissioner Frank J. Prewitt, Jr., and PCC Superintendent Arthur Schmidt (collectively, DOC) for breach of contract. In his complaint, Broeckel sought monetary damages, "immediate implementation of any necessary changes or safeguards [the court] deems just and proper to insure that plaintiff does not suffer monetary damages in the future," attorney's fees, and "such other and further relief as the court deems just and proper."

Subsequently, Broeckel moved to add his wife as a plaintiff. The superior court denied this motion because Broeckel was "not authorized by law to include Mrs. Broeckel as a plaintiff in this case, because he is not her agent or attorney." Broeckel's wife then moved to add herself as a plaintiff. The superior court denied her motion because she "lack[ed] a sufficient legal interest in the claim presented in this case to have standing under the law to be co-plaintiff with Marlin Broeckel."

On March 8, 1995, DOC moved to amend its answer and to dismiss the complaint for Broeckel's failure to exhaust his administrative remedies. Broeckel responded by suggesting that the exhaustion of remedies requirement did not apply to his situation. He also filed renewed motions to add his wife as a plaintiff and claimed that if the court granted these motions, the exhaustion of remedies issue would become irrelevant.

The superior court made no express disposition of Broeckel's renewed motions to amend his complaint and add his wife as a plaintiff. Instead, the court granted DOC's motions to amend its reply and to dismiss Broeckel's complaint for failure to exhaust administrative remedies.

On appeal to this court, Broeckel claims that his failure to exhaust administrative remedies was excused and that the superior court erred in refusing to add his wife as a plaintiff.

---

1. Broeckel alleges without record support that the officer also gave oral permission for him to receive a scanner.

## III. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion When It Dismissed Broeckel's Complaint for Failure to Exhaust Administrative Remedies.[2]

#### 1. The exhaustion requirement applies to prison inmates' grievances.

■ The threshold question is whether the exhaustion of remedies doctrine is applicable to prison inmates' grievances. *See Eidelson v. Archer*, 645 P.2d 171, 175 (Alaska 1982). Although other jurisdictions[3] apply the doctrine to inmates' grievances, this is an issue of first impression in Alaska.

We have often applied the exhaustion of administrative remedies doctrine to cases involving the decisions of governmental entities. *See, e.g., Voigt v. Snowden*, 923 P.2d 778, 781–82 (Alaska 1996); *Ben Lomond, Inc. v. Municipality of Anchorage*, 761 P.2d 119, 121–22 (Alaska 1988). In those cases, we stated that several factors weigh in favor of requiring exhaustion of remedies. *See, e.g., Voigt*, 923 P.2d at 781; *Ben Lomond*, 761 P.2d at 121–22. In particular, the doctrine permits the entity whose decision is being challenged to perform functions within its "special competence and expertise." *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 99 (Alaska 1992). These functions include allowing the agency to correct its own errors so as to moot judicial controversies, develop a factual record, and discourage the "deliberate flouting of its processes." *Id.* Thus, the doctrine "is an expression of administrative autonomy and a rule of sound judicial administration." *Ben Lomond*, 761 P.2d at 121 (quoting *State, Dep't of Labor v. University of Alaska*, 664 P.2d 575, 581 (Alaska 1983)).

We conclude that the policy interests outlined in *Voigt, Ben Lomond*, and *Eufemio* weigh strongly in favor of applying the exhaustion of remedies doctrine to prison inmates' grievances. Prisons have a significant interest in discouraging inmates from defying prison procedures. As the United States Supreme Court stated, "it is possible that frequent and deliberate flouting of administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969). In addition, sound principles of judicial economy support a requirement that a prison inmate must exhaust available prison grievance procedures before asserting a claim in court.

#### 2. Broeckel failed to exhaust available administrative remedies.

■ As outlined above, PCC offers four levels of procedures for resolving prisoners' grievances. However, Broeckel used only the informal procedures of the first level before asserting his breach of contract claim in the superior court. Nevertheless, Broeckel argues that he satisfied the exhaustion requirement by making "a good faith effort to pursue the grievance internally." Although we require claimants to have made "at least a 'good faith effort' to pursue [grievances] internally," *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 100 (Alaska 1992) (quoting *Casey v. City of Fairbanks*, 670 P.2d 1133, 1136–37 (Alaska 1983)), we do not agree that Broeckel made such an effort because he did not attempt to use PCC's formal grievance procedures.

#### 3. Broeckel is not excused from exhausting his administrative remedies.

Next Broeckel argues that he is excused from exhausting his remedies because any attempt to seek redress through administra-

**2.** "It is within the superior court's discretion whether to require the exhaustion of administrative or organizational remedies before reviewing an issue or claim." *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 98 (Alaska 1992). Thus, we must determine whether the superior court abused its discretion when it dismissed Broeckel's complaint for failure to exhaust administrative remedies. *Id.* "We 'will reverse a ruling for abuse of discretion only when left with a definite and firm conviction, after reviewing the whole record, that the trial court erred in its ruling.'" *Id.* (quoting *Morgan v. State, Dep't of Revenue*, 813 P.2d 295, 297 n. 4 (Alaska 1991)).

**3.** *E.g., In re Serna*, 76 Cal.App.3d 1010, 143 Cal.Rptr. 350, 351–52 (1978) ("The well established doctrine of exhaustion of administrative remedies applies to grievances lodged by prisoners."); *Hakeem v. Wong*, 223 A.D.2d 765, 636 N.Y.S.2d 440, 441 (1996).

tive channels would have been futile or impractical. Specifically, Broeckel asserts that he did not need to use PCC's formal grievance procedures because (1) PCC officials had prejudged the merits of his claims, (2) a new PCC policy prohibiting scanners demonstrated that PCC would inevitably deny his claims, and (3) the administrative processes available to him were procedurally defective.[4] The State contends that Broeckel waived these arguments by failing to raise them in the superior court.

a. *Broeckel did not waive his claim that PCC officials had prejudged the merits of his claims.*

 "We will not consider new arguments on appeal which were neither raised below nor included in the points on appeal unless the new issues either establish plain error or 1) do not depend on new or controverted facts; 2) are closely related to the appellant's arguments at trial; and 3) could have been gleaned from the pleadings." *Arnett v. Baskous*, 856 P.2d 790, 791 n. 1 (Alaska 1993). During the trial court's proceedings, Broeckel stated:

The Department's stance concerning the plaintiff's [Broeckel's] requested relief was made quite clear to him and no relief was granted.... [T]he Compliance Officer [James Ingersol], whom [sic] handles all "Prisoner Grievance's", [sic] did not suggest that the plaintiff file a grievance because through his own intervention, the fact that the plaintiff would gain any relief through the utilization of such a method was nil. The Compliance Officer had intervened and found that the plaintiff would not gain the relief requested, namely, for reimbursement of the cost of the computer scanner. The Compliance Officer would have been the State Official who processed the grievance and surely felt it would be a waste of his time & plaintiff's, having dis-

cussed the matter with the administrative staff at this correctional facility.

Based upon these statements, we conclude that Broeckel did not waive his argument that using the formal grievance procedures would have been futile because officials at PCC allegedly had prejudged the merits of his case. However, the record contains no evidence that Broeckel made any arguments in the superior court that relate to PCC's new computer scanner policy or allegedly deficient PCC prisoner grievance procedures. Moreover, the success of these two arguments depends upon new or controverted facts because Broeckel relies upon assertions that are not supported by any portion of the record that was before the superior court.

 Finally, these two arguments do not "establish plain error." "Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted." *Tenala, Ltd. v. Fowler*, 921 P.2d 1114, 1124 (Alaska 1996) (quoting *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981)). In this case, Broeckel asserts that PCC's new computer scanner policy renders futile any administrative claim he could make. However, his own evidence suggests that the scanner policy entered into effect at PCC nearly two months after he surrendered the scanner. And, he does not argue that the authorities who would hear his administrative grievance would not have authority to allow him to keep the scanner despite the subsequently enacted policy.

 Similarly, Broeckel has not demonstrated that defects in PCC's grievance procedures establish plain error. He argues that the grievance procedure is "long-drawn out, wasteful and oppressive" and that it fails to provide a "right to present evidence and witnesses and cross-examine and challenge adverse evidence and witnesses, et cetera."

---

4. Broeckel also argues that his failure to exhaust administrative remedies should be excused because his claim does not involve any questions of fact. We disagree. To state his case, Broeckel frequently cites to a "supplemental excerpt," which contains documents and allegations that are not found in the trial court's record. The State contests the factual basis of Broeckel's claims relating to these supplemental documents.

In addition, Broeckel makes several contested assertions without any citation to the record, excerpt, or supplemental excerpt. The materials contained in Broeckel's supplemental excerpt are not properly part of the appellate record and therefore cannot be considered by this court as furnishing support for Broeckel's position. *See* Alaska R.App.P. 210(a).

However, Broeckel cites no evidence to substantiate these claims. In fact, contrary to his claims, the grievance policy apparently permits inmates to challenge the grievance investigator's report and requires prison officials to resolve grievances in a short time frame. Therefore, we conclude that Broeckel has waived his arguments relating to PCC's new computer scanner policy and PCC's allegedly deficient grievance procedures.

### b. Broeckel has not established futility on grounds of decision maker bias.

Broeckel alleges that a formal grievance would have been futile because the people who would have determined its outcome were biased. Specifically, he asserts that PCC Compliance Officer James Ingersol[5] had indicated that Broeckel would not gain any relief through PCC's grievance process. In addition, Broeckel apparently suggests that because Superintendent Arthur Schmidt "admit[ted] to having held internal meetings regarding Broeckel's request," Schmidt must have concurred with Ingersol. Significantly, however, Broeckel does not point to any facts that suggest bias on the part of the Regional Director, who would have decided Broeckel's Level Four administrative appeal. Instead, he makes a general, unsubstantiated claim that all employees of the Department of Corrections are prejudiced against prisoners' claims.

We have held that "[w]here exhaustion of administrative remedies will be futile because of the certainty of an adverse decision, a party need not obtain a final agency ruling before seeking judicial review." *Standard Alaska Prod. Co. v. State, Dep't of Revenue*, 773 P.2d 201, 209 (Alaska 1989). However, in *Municipality of Anchorage v. Higgins*, we concluded that an administrative remedy was not futile, although "two of the [remedy's] three steps ... involved appeals to the very individuals responsible for [the action under protest]," because the third step of the remedy was not demonstrably futile. 754 P.2d 745, 747–48 (Alaska 1988); *see also Voigt v. Snowden*, 923 P.2d 778, 781–82 (Alaska 1996) (stating that administrative procedures are not futile where ultimate administrative decision rests with one who was only minimally involved with prior administrative stages). *Higgins* is analogous to Broeckel's situation. Even if his formal grievance would have gone to Ingersol and Schmidt and even if both Ingersol and Schmidt had prejudged the merits of Broeckel's claim, Broeckel could have appealed to the Regional Director. There is no evidence that the Regional Director was biased. Therefore, Broeckel is not excused from exhausting his administrative remedies.[6]

### B. The Superior Court Did Not Err in Denying Attempts to Add Broeckel's Wife as a Plaintiff.[7]

Broeckel also appeals the superior court's actions relating to three motions to add his wife as a plaintiff.[8] The superior court denied the first motion, which Broeckel's wife submitted herself, based upon its finding that she lacked a sufficient legal interest to have standing. In response, Broeckel filed a pair of motions, acting for his wife under a power

---

5. Although Broeckel contends that Ingersol "would have been the State Official who processed the grievance," Ingersol's role in the grievance process is not clear.

6. PCC's grievance policy requires inmates to file a formal grievance within 30 days after the date of the incident. The record indicates that PCC officials ordered Broeckel to surrender the scanner on September 28, 1994. Because Broeckel filed his complaint with the superior court within 30 days, his failure to file a timely formal grievance does not bar him from now pursuing PCC's formal grievance procedures. However, he must do so within 30 days from the date of this decision.

7. Broeckel's argument requires us to examine whether Melanie Broeckel had standing to bring a breach of contract claim against the State. The doctrine of standing is a matter of judicial policy, and as such, is a question of law that we review using our independent judgment. *Kleven v. Yukon–Koyukuk Sch. Dist.*, 853 P.2d 518, 525 n. 13 (Alaska 1993).

8. Broeckel initially filed a "Motion to Append Caption Heading" that sought to add his wife as a plaintiff. The superior court denied the motion stating, "Marlin J. Broeckel is not authorized by law to include Mrs. Broeckel as a plaintiff in this case, because he is not her agent or attorney." Broeckel has not appealed this ruling.

of attorney, to amend the complaint [9] and to add her as a plaintiff. The superior court dismissed the complaint instead of ruling on the last pair of motions. We conclude that the superior court did not err.

1. *The superior court effectively denied Broeckel's last pair of motions.*

■■■■■ The State argues that we should not consider Broeckel's last pair of motions to amend the complaint and add his wife as a plaintiff because "the trial court did not rule on either motion." "Ordinarily, an appellate court does not pass on questions raised but not ruled on in the court below...." 4 C.J.S. *Appeal & Error* § 220, at 299 (1993). However, "[a] ruling by implication may be sufficient to present a question for review, and ... silence or a failure or refusal to rule may often be given the effect of a ruling, unless the matter was never brought to the attention of the court." *Id.* at 300.

In this case, Broeckel's motions were brought to the attention of the court by Broeckel's written motions and supporting memoranda and DOC's written response. By granting DOC's motion to dismiss, the superior court effectively denied Broeckel's motions. We therefore review the superior court's implied denial for error.

2. *Broeckel's wife does not have standing to sue DOC for breach of contract.*

■■■■ To review the superior court's refusal to add Broeckel's wife as a plaintiff, we must consider whether she has standing to sue DOC for breach of contract. We have stated that "[u]nder the interest-injury approach, a 'party asserting standing [must demonstrate] a sufficient "personal stake" in the outcome of the controversy to ensure the requisite adversity.'" *Kleven v. Yukon–Koyukuk Sch. Dist.,* 853 P.2d 518, 525 (Alaska 1993) (quoting *Hoblit v. Commissioner of Natural Resources,* 678 P.2d 1337, 1340 (Alaska 1984)). We conclude that Broeckel's wife does not have a sufficient personal stake to assert a breach of contract claim against DOC.

In his complaint, Broeckel alleges that PCC's "approval" of the scanner amounts to a legally enforceable promise. However, even if an enforceable promise exists, Broeckel—rather than his wife—would be the promisee. Thus, there is no enforceable promise between PCC officials and Broeckel's wife.

Broeckel's complaint also suggests that PCC's alleged approval reasonably induced his wife to purchase the scanner for him. The *Restatement (Second) of Contracts* § 90(1)(1979) states that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of ... a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Comment c clarifies the general rule:

> If a promise is made to one party for the benefit of another, it is often foreseeable that the beneficiary will rely on the promise.... Justifiable reliance by third persons who are not beneficiaries is less likely, but may sometimes reinforce the claim of the promisee or beneficiary.

In this case, Broeckel's wife is not a third-party beneficiary because the only benefit she would receive from PCC's performance of the alleged contract is the satisfaction of knowing that her husband has a scanner. We decline to conclude that this is a sufficient benefit to render a third party a beneficiary of a contract. Instead, we characterize any justifiable reliance by Broeckel's wife as that of a third-party non-beneficiary that may reinforce Broeckel's claims against DOC. Thus, if PCC officials approved Broeckel's request for a scanner in a way that is legally enforceable, Broeckel may receive compensation for reasonable expenses that he can prove his wife incurred in obtaining the scanner.

■■■■ Because Broeckel's wife is not a third-party beneficiary of the alleged contract, she does not have a sufficient personal stake to have standing to bring a cause of action for breach of contract. Therefore, we conclude that the superior court did not err

---

**9.** In the amended complaint, Broeckel essentially sought to add his wife as a plaintiff.

in declining to add Broeckel's wife as a plaintiff under her motion or Broeckel's two motions.

### C. The Superior Court Did Not Err in Granting DOC's Motion for Leave to File an Amended Answer.[10]

In the trial court, DOC filed an amended answer in which it argued for the first time that Broeckel failed to exhaust his administrative remedies. Broeckel alleges in passing that the court should not have allowed DOC to file an amended answer. We agree with the State that Broeckel abandoned this argument by omitting it from his points on appeal. *Braun v. Alaska Commercial Fishing & Agric. Bank*, 816 P.2d 140, 145 (Alaska 1991). Furthermore, the State correctly points out that this argument lacks merit because Broeckel has demonstrated no prejudice that would indicate that the court abused its discretion to grant this motion. *See Merrill v. Faltin*, 430 P.2d 913, 915 (1967) (indicating that a court should consider whether to allow a party to amend its answer by considering the disadvantages to the parties that would occur as a result of permitting or not permitting the amendment). Therefore, we affirm the superior court's decision to allow DOC to amend its answer.

### IV. CONCLUSION

We conclude that the superior court did not err when it dismissed Broeckel's breach of contract claim. Broeckel failed to exhaust his administrative remedies, and he has not demonstrated that his failure was excused. In addition, we determine that Broeckel's wife does not have a sufficient personal stake in the outcome of this case to join her husband as a plaintiff. Therefore, we AFFIRM the superior court's decision.

**D.L.M. and N.C.R., Appellants,**

**v.**

---

10. We review a trial court's decision to grant or deny leave to amend pleadings under the abuse of discretion standard. *Merrill v. Faltin*, 430 P.2d 913, 915 (Alaska 1967).