**J. Burk VOIGT, Appellant,**

v.

**Arthur H. SNOWDEN, II, Richard D. Savell, Karrold Jackson, Ronald J. Woods, Stephanie J. Cole, Shirley Nash and State of Alaska, Appellees.**

No. S–7369.

Supreme Court of Alaska.

Sept. 13, 1996.

J. Burk Voigt, Fairbanks, pro se.

Robert John, Law Office of Robert John, Fairbanks, for Appellant.

Frank S. Koziol, Law Office of Frank S. Koziol, Anchorage, for Appellees.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH and FABE, JJ.

### OPINION

FABE, Justice.

## I. INTRODUCTION

J. Burk Voigt claimed that he was wrongfully terminated from his position with the

Alaska Court System. While he initially contested his termination and filed a formal grievance, Voigt failed to exhaust his administrative remedies. The issue raised in this appeal is whether this failure should be excused.

## II. FACTS AND PROCEEDINGS

### A. Voigt's Tenure as Clerk of Court and Eventual Termination

In June 1989 J. Burk Voigt applied for and was offered the position of Fairbanks Clerk of Court and Assistant Area Court Administrator for the Fourth Judicial District of the Alaska Court System. Voigt accepted the job and moved from Colorado to Fairbanks.

Voigt received his first performance evaluation in September 1990. Charles Gibson, Area Court Administrator, gave Voigt an overall evaluation of "above average." However, in the category of "getting along with other workers," Voigt received a rating of "needs improvement." Gibson noted that he wanted Voigt to consider the evaluation of his ability to relate to others "not as a reprimand, but as a guide for the future; not to punish, but to inspire."

In February 1991 Voigt received a second evaluation from Gibson because of Gibson's imminent departure as Area Court Administrator. On Voigt's evaluation form, Gibson created a box between "above average" and "outstanding" to describe Voigt's overall performance. He noted that Voigt had "applied himself with enthusiasm and improved his performance considerably." The new Presiding Judge for the Fourth Judicial District, Judge Richard Savell, signed the evaluation but noted that he lacked "a basis for comparison" and did not "endorse or disagree" with the evaluation.

After Gibson's departure, Voigt assumed the position of Acting Area Court Administrator. He served in this capacity for nine months before a permanent Area Court Administrator was appointed.[1] During that time, he received a written reprimand from Presiding Judge Savell for "unacceptable behavior in the performance of [his] duties." Savell characterized Voigt's behavior as "game-playing, passive-aggressive behavior, or behavior befitting a spoiled, pouting child." The reprimand related several examples of Voigt's conduct in this regard. The letter of reprimand warned Voigt that "failure to correct these deficiencies will lead to further disciplinary action up to and including your dismissal, if warranted."

Five months after the reprimand, Presiding Judge Savell gave Voigt his third performance evaluation. Savell rated Voigt as overall "above average" and recommended him for a merit increase. However, Judge Savell also noted that Voigt tended to circumvent his superiors if he disagreed with them and that he was "openly hostile and disrespectful in his dealings with representatives of court administration." Savell expressed his concern that Voigt's "great accomplishments in the Clerk's Office have come at the price of dampened morale and fear on the part of subordinate employees."

In February 1992 Voigt filled a vacant Court Clerk I position by offering it to a former superior court law clerk. At the time that Voigt made the offer, this former clerk was working as an attorney in Maine. R.D., an Alaska Native working for the court system in Galena, filed a grievance alleging discrimination when she was not hired for the position. R.D. had previously applied for positions with the Fairbanks court on two occasions and had not been hired for either of them. Woods reviewed the grievance and upheld Voigt's hiring decision. However, shortly thereafter, Presiding Judge Savell overturned Woods' decision in R.D.'s case, finding that Voigt had ignored R.D.'s superior qualifications and experience and had imposed a "subjective personality requirement that [was] potentially discriminating in its application."

Prior to the resolution of R.D.'s grievance, Arthur H. Snowden, II, Administrative Director of the Alaska Court System, requested Personnel Director Karrold Jackson to investigate the integrity of the hiring procedures being used in Fairbanks. Snowden instructed Jackson to wait for completion of any

---

1. In November 1991 Ronald Woods became the Area Court Administrator.

outstanding grievances before proceeding with this task.

Jackson traveled to Fairbanks on March 3, 1992 in order to conduct her investigation of Voigt's patterns of hiring. According to Voigt, after meeting with him, Jackson met "mostly with employees who had a complaint to register against Voigt and were 'promised anonymity.'"

On March 24, 1992, Woods and Savell delivered a Notice of Intent to Terminate to Voigt. The reasons given for dismissal included "numerous ... inappropriate statements and actions in dealing with subordinate employees;" misuse of court resources "for improper and harmful purposes;" insubordinate behavior in an "attempt[ ] to undermine the presiding judge's action[s] in front of subordinate employees;" and "poor personnel and supervisory practices despite ... previous warnings." Voigt claims that none of the matters in this notice had ever been discussed with him before.

## B. *The Administrative Proceedings*

Voigt challenged his termination by requesting a pretermination hearing. Normally Judge Savell would have presided over the pretermination hearing as the Area Court Administrator's superior. However, because of his role in the investigation and decision to terminate Voigt, he asked then Chief Justice Jay A. Rabinowitz to designate another presiding judge for the purpose of holding a pretermination hearing. Chief Justice Rabinowitz appointed Judge Niesje J. Steinkruger as Acting Presiding Judge for the purpose of holding the pretermination hearing.

On March 26, 1992, Judge Steinkruger held a pretermination hearing. Voigt's counsel asked Judge Steinkruger to recuse herself and attempted to exercise a peremptory disqualification. Judge Steinkruger rejected both of these requests.

The hearing, which was recorded and open to the public, lasted over twelve hours. Voigt's counsel agreed that Voigt was not entitled to a full-blown evidentiary hearing at the pretermination stage and that the purpose of the hearing was to determine whether there was reasonable cause to terminate Voigt. Voigt's counsel examined Judge Savell and Ronald Woods extensively regarding the basis for the allegations in the Notice of Termination. Voigt also testified. Voigt's counsel made a closing statement.

The following day, Judge Steinkruger upheld the decision to terminate Voigt, finding reasonable grounds to believe that the charges were true and that they supported the proposed action of termination. That same day, Savell sent Voigt a Final Notice of Dismissal. The notice informed Voigt that he had the right to file a formal grievance as outlined in Alaska Court System Personnel Rule (ACSPR) 9.05. A copy of the rule was attached.

Under ACSPR 9.05, Voigt had five working days within which to file a formal written grievance with Personnel Director Karrold Jackson. Voigt did so by a letter dated April 2, 1992. Voigt continued to receive full pay and benefits. Stephanie Cole, the Deputy Administrative Director, forwarded the grievance to Administrative Director Snowden and requested the appointment of an investigator. Snowden appointed Christine Johnson, Alaska Court System Rules Attorney. Voigt did not object to this appointment.[2] After interviewing numerous witnesses, Johnson filed a report that supported the termination.

Voigt's next step in the administrative process was to request a hearing under ACSPR 9.05.02. He did not. Instead, Voigt's attorney wrote to Chief Justice Rabinowitz, indicating that further administrative proceedings would be futile and that his client would pursue his case in federal court.

Had Voigt requested a hearing, a hearing officer would have been appointed by Administrative Director Snowden. Voigt would have had the right to file an objection to the

---

**2.** Ms. Cole offered Thomas Wickwire, counsel for Voigt, the option of "skipping this stage" and proceeding directly to a hearing before an impartial hearing officer, since the pretermination hearing had covered many of the same areas as would an investigation. Voigt's counsel asked Cole who would be conducting the investigation. Upon learning that it would be Johnson and discussing it with his client, Wickwire stated that Voigt did not wish to waive the investigation.

choice of officer and to demonstrate bias on the part of the officer. Voigt would have had the right to be represented by counsel, to call witnesses, and to cross-examine witnesses against him. The hearing would have been recorded, with all testimony given under oath. The decision of the hearing officer would have been forwarded to Snowden for review. If Snowden upheld an adverse decision, Voigt would have had the right to file an administrative appeal to the superior court under Appellate Rule 602(a)(2).

## C. *The Judicial Proceedings*

Voigt filed a complaint in federal district court on April 16, 1992. Voigt's federal law claims were ·dismissed with prejudice on June 20, 1994, and his state law claims were dismissed without prejudice. This decision was affirmed by the Ninth Circuit. *Voigt v. Savell,* 70 F.3d 1552, 1566 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1826, 134 L.Ed.2d 931 (1996). On May 17, 1994, Voigt filed a complaint in superior court in which he made contract, tort, and constitutional claims. Judge Michael I. Jeffery granted the defendants' motion for summary judgment, based on Voigt's failure to exhaust his administrative remedies. Alternatively, Judge Jeffery found that Voigt's lawsuit was an untimely administrative appeal. Voigt appeals.

## III. *DISCUSSION*

### A. *Standard of Review*

■ This court reviews the superior court's grant of summary judgment *de novo. Nielson v. Benton,* 903 P.2d 1049, 1052 (Alaska 1995). The judgment will be affirmed only if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Wright v. State,* 824 P.2d 718, 720 (Alaska 1992).

### B. *Voigt's Failure to Exhaust His Administrative Remedies*

■ As we observed in *Van Hyning v. University of Alaska,* ·the exhaustion of administrative remedies doctrine "allow[s] an administrative agency to perform functions within its special competence—to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." 621 P.2d 1354, 1355–56 (Alaska 1981) (quoting *Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1972)). Here, Voigt concedes that he failed to exhaust his administrative remedy by declining to proceed to a grievance hearing before a hearing officer. Furthermore, he acknowledges that the Alaska Court System's grievance procedures are adequate as written and that they comply with due process.[3]

■ Voigt argues that he should be excused from the exhaustion requirement since it would have been futile for him to proceed to the hearing stage, given the involvement of Snowden, Jackson, Savell, and Woods in his investigation and termination. In a related argument, he contends that the grievance procedures were not being applied in a fair manner, due to the appointment of Judge Steinkruger to conduct the pretermination hearing and the selection of a member of Snowden's staff to conduct an "in-house" investigation.

■ The availability of an impartial tribunal is "a basic ingredient of a fair and adequate· hearing in accordance with due process." *Eidelson v. Archer,* 645 P.2d 171, 181 (Alaska 1982) (citations omitted). We have stated that when one person performs the functions of investigating, prosecuting and judging a case, this requirement of an impartial tribunal may not be satisfied. *Id.* at 182; *Storrs v. Lutheran Hosp. & Homes Soc'y of Am., Inc.,* 609 P.2d 24, 28 n. 12 (Alaska 1980). While Voigt claims that an adverse decision from Snowden was a certainty, Snowden's involvement in Voigt's case was minimal.[4] In

---

3. Indeed, Voigt's expert, John N. Taylor, Ph.D., Associate Professor of Management at the University of Alaska Fairbanks, states that the Alaska Court System's grievance procedures are "comprehensive" and "typical of those found in any large private or government employer organizations.·"

4. While Snowden initiated an investigation of Voigt's hiring practices, he specifically instructed Karrold Jackson to refrain from starting her investigation of Fairbanks hiring practices until after all grievances were over. After Voigt's termination, Snowden appointed an investigator, Christine Johnson, to prepare a report on the

its decision on summary judgment, the superior court recognized and relied on the fact that "Snowden had never actually been called upon to make a decision about the propriety of Voigt's termination."

In *Eidelson*, we rejected a suspended doctor's futility argument which was similar to that of Voigt, despite the fact that Dr. Ivy, the hospital official who initiated the suspension of the doctor's privileges, was also a member of the executive committee which was to review the suspension decision. We found that under the hospital bylaws, Dr. Archer was permitted to object to Dr. Ivy's participation in the executive committee's review of the hearing committee's recommendation. *Eidelson*, 645 P.2d at 182. We also rejected Dr. Archer's argument that the executive committee could not review the suspension fairly because of its previous involvement in the case. *Id.* at 183. This was in part due to the fact that Dr. Archer had a further right to appeal to the governing board, which had not played any role in the investigation or decision to terminate. *Id.*

Dr. Archer contended, as Voigt does in this case, that the disciplinary proceedings were being deliberately used against him, and that this excused his failure to exhaust his administrative remedies. We held that Dr. Archer should have raised this complaint through the administrative appeals process. *Id.* at 179–80.

In this case, Voigt's fears of a biased hearing could certainly have been allayed had he continued with the administrative process. The ultimate decision in Voigt's case was to be made by Snowden, whose role was not that of prosecutor or investigator. Snowden might well have appointed a hearing officer whom Voigt believed would be fair and who could have developed an accurate factual record. Had Voigt continued to harbor concerns that the selected hearing officer would not be fair and impartial, he would have had the right to object to the choice of hearing officer. And Voigt could have continued to raise those objections in an administrative appeal to the superior court.[5]

Like the doctor in *Eidelson*, Voigt should have pursued his complaints through the grievance and administrative appeal process before turning to the courts for help. To hold otherwise would be to obviate the requirement that an adverse decision be a "certainty." Voigt's failure to exhaust his administrative remedies cannot be excused on the grounds of futility or that his remedy was inadequate.

 Voigt also claims that because he contested the form of the administrative procedure, he was not required to exhaust his administrative remedies. *See Kleven v. Yukon–Koyukuk Sch. Dist.*, 853 P.2d 518, 525 (Alaska 1992). Our decision in *Kleven* does not help Voigt. In *Kleven*, the terminated administrator wanted to pursue his grievance through binding arbitration, as provided under the school district labor contract. The school district wanted him to pursue his grievance before the school board. We noted that in most cases, "administrative procedures are clear, and a claimant has only to follow them in order to seek relief from an administrative body." *Id.* But in a case where the procedure that will be followed is unclear, the claimant may go to court to get the dispute resolved, with a remand to the appropriate administrative agency to follow the correct procedure. *Id.*

In this case, the procedure to be followed was clear, and there is every indication that Voigt understood it. Indeed, Voigt never alleges that he misunderstood the formal grievance procedure required by the Personnel Rules. Since the grievance procedure to

termination. Voigt had no objection to the selection of Johnson as investigator.

5. Voigt argues the related point that once he discovered that "his fate had already been sealed," he worried that he would be collaterally estopped from relitigating the facts of his dispute. He argues that this was a major reason for his abandonment of the administrative appeals process. However, as *Diedrich v. City of Ketchi-*

*kan* makes clear, issue preclusion as a result of administrative proceedings hinges on the fact that the administrative hearing was fair and presented the plaintiff with a full opportunity to present his case. *See Diedrich v. City of Ketchikan*, 805 P.2d 362, ·366–67, 369–70 (Alaska 1991). If the process had been unfair, Voigt would not have been estopped. If it was fair, he would have had no reason to complain.

be used was clear, Voigt was required to make a "'good faith effort' to pursue the grievances internally." *Id.* at 524 (quoting *Eufemio v. Kodiak Island Hosp.*, 837 P.2d 95, 100 (Alaska 1992)). This he failed to do.[6]

## IV. CONCLUSION

Voigt's failure to exhaust his administrative remedies cannot be excused as a matter of law. The judgment of the superior court is AFFIRMED.

RABINOWITZ, J., not participating.

---

**6.** Voigt also briefly takes issue with the appointment of Judge Steinkruger as Acting Presiding Judge for the purpose of conducting his pretermination hearing. However, as the trial court noted in its decision on summary judgment, "since [Voigt would] continu[e] to receive pay and benefits until the conclusion of [the grievance] process, the post-termination hearing would cure any deficiencies in the pretermination hearing." Voigt would also have had the opportunity to raise arguments about the propriety of his suspension during the formal grievance and administrative appeal process.