Representative Wes KELLER; Representative Mike Kelly; Senator Fred Dyson; Senator Tom Wagoner; and Representative Bob Lynn, Appellants,

v.

Senator Hollis FRENCH; Senator Kim Elton; Stephen E. Branchflower; Alaska Legislative Council; Senator Lyda Green; Senate Judiciary Committee; Dianne Kiesel; Annette Kreitzer; Janice Mason; Nicki Neal; Michael Nizich; Kristina Perry; and Brad Thompson, Appellees.

No. S–13296.

Supreme Court of Alaska.

April 3, 2009.

**300**

Kevin G. Clarkson, Brena, Bell & Clarkson, P.C., Anchorage, Kelly J. Shackelford, Hiram S. Sasser III, and Roger Byron, Liberty Legal Institute, Plano, Texas, and Scott R. Hoyt, Ashley E. Johnson, and Malachi O. Boyuls, Gibson, Dunn & Crutcher, Dallas, Texas, for Appellants.

Peter J. Maassen, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellees Senator Hollis French, Senator Kim Elton, Stephen E. Branchflower, Alaska Legislative Council, Senator Lyda Green, and Senate Judiciary Committee.

Wayne Anthony Ross, Ross & Miner, P.C., Anchorage, for Amicus Curiae Law Professors and Legal Scholars.

Before: MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Claiming that a legislative investigation into the governor's dismissal of the Public Safety Commissioner violated the Alaska Constitution's fair and just treatment clause, five legislators sued two other legislators, a permanent legislative committee, and the investigator to halt the investigation. The five legislators argue on appeal that the superior court erred in denying their motion for a temporary restraining order and preliminary injunction, in reasoning that there was no justiciable dispute, and in dismissing their complaint. We affirmed in a highly expedited dispositive order issued October 9, 2008. This opinion explains why we did so. We hold that the five legislators did not have standing to claim in this case that there was a violation of the fair and just treatment clause.

## II. FACTS AND PROCEEDINGS

Governor Sarah Palin dismissed Public Safety Commissioner Walter Monegan on July 11, 2008. On July 28 the Alaska Legislative Council, a bipartisan,[1] permanent interim committee of the Alaska Legislature,[2] initiated an investigation into the dismissal. The Legislative Council unanimously passed a motion approving funds to "contract[ ] for legal services to investigate the circumstances and events surrounding [Monegan's termination], and potential abuses of power and/or improper actions by members of the executive branch, and prepare a report."[3] The motion also directed that the investigation be "professional, unbiased, independent, objective, and conducted at arm's length from the political process." The full legislature was in session when the Legislative Council passed its motion on July 28, and all members of the Legislative Council attended the meeting at which the motion was passed.

The Legislative Council, chaired by Senator Kim Elton, chose Senator Hollis French to act as the investigation's project director. Former state prosecutor Stephen Branchflower was selected as the independent investigator. Branchflower was originally expected to produce a report to be released on October 31, 2008, but the release date was later changed to October 10.

---

1. The Legislative Council consists of seven representatives and seven senators. Ten are Republicans; four are Democrats.

2. AS 24.20.010–.020.

3. A "unanimous vote" is a vote in which every voter concurs. BLACK'S LAW DICTIONARY 1607 (8th ed.2004). Either eleven or twelve of the council's fourteen members voted to approve the motion. No members voted against it. The two or three remaining members were present at the meeting but apparently did not vote.

On August 29 Governor Palin was named as the vice-presidential running mate to Republican presidential nominee Senator John McCain.

On September 16 five state legislators[4] filed a superior court complaint against Senator French, Senator Elton, Branchflower, and the Alaska Legislative Council. We refer to the plaintiff legislators as the "Keller plaintiffs." Their complaint, filed in Case No. 3AN–08–10489 CI, asserted that the defendants were "conducting a 'McCarthyistic' investigation" and sought declaratory and injunctive relief. The Keller plaintiffs claimed that the investigation exceeded the legislature's power and unconstitutionally violated separation of powers principles; unlawfully exceeded the authority granted to the Legislative Council by motion; violated the due process clause of the Alaska Constitution; and violated statutory prohibitions related to conflicts of interest and unethical conduct.

The defendants responded on September 24 with a motion to dismiss. On September 25 the Keller plaintiffs moved for a temporary restraining order and preliminary injunction to stop the investigation immediately.

Also on September 25, seven state employees who had been subpoenaed in the investigation to appear before the Senate Judiciary Committee commenced a separate lawsuit, Case No. 3AN–08–10780 CI, challenging the validity of their subpoenas.[5] We refer to these plaintiffs as the "Kiesel plaintiffs."

They sued the subpoenas in rem and Senator French, Senator Lyda Green, and the Senate Judiciary Committee.

The superior court consolidated the two lawsuits.

After conducting an October 2 hearing on the Keller plaintiffs' temporary restraining order, the superior court ruled that the claims of the Keller and Kiesel plaintiffs raised nonjusticiable political questions, denied the motion for injunctive relief, and dismissed both complaints.

On October 3 the Keller plaintiffs filed their appeal in this court and asked us to expedite the appeal. They sought an appellate decision by October 9, 2008, one day before Branchflower was then expected to release the results of the investigation. The Kiesel plaintiffs filed notice with us that they would not participate in the appeal. The active appellees in this appeal are Senator French, Senator Elton, Branchflower, and the Legislative Council (the defendants in the Keller lawsuit) and Senator Green and the Senate Judiciary Committee (two of the defendants in the Kiesel lawsuit).[6] We refer to the active appellees collectively as the "French defendants."

Also on October 3 we granted the Keller plaintiffs' motion for an expedited appeal. The parties submitted highly expedited briefs.[7] The Keller plaintiffs argued that the investigation violated the fair and just treatment clause of the Alaska Constitution.[8]

---

**4.** These five legislators are Representatives Wes Keller, Mike Kelly, and Bob Lynn, and Senators Fred Dyson and Tom Wagoner. Plaintiffs moved in the superior court to file an amended complaint that would include Representative Carl Gatto as a party, but the superior court did not rule on the motion. It was not clear to the court when we issued our dispositive order that Representative Gatto should not be treated as an appellant. Our dispositive order counted Representative Gatto and included him in the caption. We have corrected the caption here.

**5.** The seven state employees who sued are Dianne Kiesel, Annette Kreitzer, Janice Mason, Nicki Neal, Michael Nizich, Kristina Perry, and Brad Thompson.

**6.** The Kiesel plaintiffs are automatically classified in this appeal as appellees per Alaska Appellate Rule 204(g). But in this opinion we use "appellees" to refer only to the individuals and

legislative entities sued in personam in the consolidated cases. The seven employees later filed their own separate appeal, Case No. S–13322. That appeal is pending.

**7.** We commend the parties and their counsel for the excellence of their briefs and arguments, for their procedural cooperation, and for the assistance they have given this court.

**8.** Article I, section 7 of the Alaska Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law. *The right of all persons to fair and just treatment in the course of legislative and executive investigations shall not be infringed.*" (Emphasis added.) The emphasized text is commonly referred to as the "fair and just treatment clause."

They contended that three people involved with the investigation were or appeared to be biased and that the investigation violated the legislature's own internal rules. The Keller plaintiffs asked us to grant a temporary restraining order and to remand for an evidentiary hearing on their motion for a preliminary injunction and for a trial on the merits.

We heard oral argument on October 8. On October 9, we issued a dispositive order stating:

> Appellants are six legislators who claim that the Alaska Legislative Council's investigation into the dismissal of Public Safety Commissioner Walter Monegan is unlawful and should be enjoined. The superior court denied the appellants' Motion for Temporary Restraining Order and granted the Motion to Dismiss submitted by the Alaska Legislative Council and the other defendants.
>
> At the request of the appellants for a decision no later than today, October 9, 2008, we heard the appeal on an expedited basis. On consideration of the October 6, 2008 appellants' brief, the October 6, 2008 amicus curiae brief, the October 7, 2008 appellees' brief, and the oral argument held on October 8, 2008,
>
> IT IS ORDERED: The order of the superior court issued on October 2, 2008 granting the Motion to Dismiss is AFFIRMED. An opinion will follow.[9]

## III. STANDARD OF REVIEW

■ Whether a party has standing to sue is a question of law that we review de novo.[10]

## IV. DISCUSSION

The parties have focused on two main issues, either of which is potentially dispositive: (1) whether the Keller plaintiffs have standing to bring this suit; and (2) whether, as the superior court held, the entire dispute is not justiciable. Our resolution of the standing issue makes it unnecessary to reach the other issue.

### A. Whether the Keller Plaintiffs Have Standing To Challenge the French Defendants' Alleged Constitutional Violation

■ Standing is a "rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions."[11] The Keller plaintiffs argue that they have both citizen-taxpayer and interest-injury standing to file suit. The superior court assumed without deciding that the Keller plaintiffs had standing.[12]

#### 1. Citizen-taxpayer standing

■ To establish citizen-taxpayer standing, plaintiffs must show that the case is of public significance and that they are appropriate plaintiffs.[13] We have held that a plaintiff was not appropriate when the plaintiff was a "sham plaintiff" with no true adversity of interest; when the plaintiff was incapable of competently advocating his or her position; and when there was another potential plaintiff more directly affected by the challenged conduct who had sued or was likely to sue.[14]

We agree with the Keller plaintiffs that they were not "sham plaintiffs" and that they were capable of competently advocating their positions. And we assume, without deciding, that an alleged violation of the fair and just treatment clause is a matter of public significance. But there is nonetheless a substantial question here as to whether other persons who are more directly affected have sued or are likely to sue.

9. *Keller v. French*, 194 P.3d 364 (Alaska 2008).

10. *St. Paul Church, Inc. v. Bd. of Trs. of the Alaska Missionary Conference of the United Methodist Church, Inc.*, 145 P.3d 541, 549–50 (Alaska 2006).

11. *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1034 (Alaska 2004).

12. The Keller plaintiffs state that "[t]he superior court correctly found that Appellants[] have standing to assert[] their claims." But the superior court actually resolved the case while *"[a]ssuming* that the plaintiffs have standing to assert such claims."* (Emphasis added.)

13. *Trustees for Alaska v. State*, 736 P.2d 324, 329 (Alaska 1987).

14. *Id.* at 329–30.

The Keller plaintiffs argue that no other potential plaintiffs who are more directly affected have sued or are likely to sue. At a minimum, this argument ignores the Kiesel plaintiffs, who were more directly affected by the investigation and who actually sued some of the French defendants. As the subpoenaed witnesses, the Kiesel plaintiffs were among the classes of persons in this investigation most obviously protected by the fair and just treatment clause. They did not allege any violation of the fair and just treatment clause in the superior court. But had they thought they were being mistreated, they would have been far more appropriate plaintiffs to make that claim than the Keller plaintiffs, none of whom self-identified as either a witness or a target of the investigation. We have held that an appellant did not have citizen-taxpayer standing when a more directly affected plaintiff had already filed suit based on closely related claims, even though the claims were not identical.[15] We likewise reject the Keller plaintiffs' argument that no other plaintiffs more directly affected by the challenged conduct have sued.

■ In addition to the subpoenaed plaintiffs, as of October 9 when we issued our dispositive order there was at least one other potential plaintiff who was directly affected by the investigation and who was fully capable of suing. The Keller plaintiffs concede that Governor Palin was "arguably more directly concerned," but argue that she is "unlikely to sue." They argue that the governor stated that she would cooperate with the investigation, and that this, along with the fact that she was in the middle of a national election campaign, indicated that she was not going to bring suit.[16] Their interpretation of

the citizen-taxpayer standing test is too literal. Even if the governor did not intend to sue, there is no indication that, if she thought her rights were being violated, she would be unable to do so. The Keller plaintiffs do not contend that the governor or any other potential plaintiffs were somehow limited in their ability to sue. That individuals who are more directly affected have chosen not to sue despite their ability to do so does not confer citizen-taxpayer standing on an inappropriate plaintiff.

We have denied citizen-taxpayer standing on similar grounds before. In *Kleven v. Yukon–Koyukuk School District* a former employee who filed a grievance but resigned before it was resolved sued to challenge his former employer's grievance process.[17] We held that the employee lacked citizen-taxpayer standing because the remaining employees were in a better position to raise the complaints and because we had no "reason to believe that current ... employees would be indisposed to press legitimate grievances." [18] That decision did not hinge on the likelihood that the current employees would sue. Here there is no reason to believe that any potentially implicated executive branch officials, including the governor, would be unwilling to sue if they thought their rights were being violated during the investigation. We therefore reject the Keller plaintiffs' argument that no other plaintiff more directly affected by the challenged conduct is likely to sue.

■ Comparing other potential parties' claims with those of the Keller plaintiffs reveals how indirectly, if at all, the investigation affected the Keller plaintiffs. The fair and just treatment clause was written to

---

15. *Ruckle,* 85 P.3d at 1034–37 (holding that superior court did not err in concluding plaintiff lacked citizen-taxpayer standing because another plaintiff more directly affected had already brought suit raising nearly identical claims).

16. The final brief was submitted October 7 and oral argument took place October 8. We issued our dispositive order October 9, 2008. *Keller v. French,* 194 P.3d 364 (Alaska 2008). The election took place November 4, 2008.

17. *Kleven v. Yukon–Koyukuk Sch. Dist.,* 853 P.2d 518, 526 (Alaska 1993); *see also State v. Lewis,* 559 P.2d 630, 635 (Alaska 1977) (holding that

party had taxpayer standing in part because "there is no one in a better position to complain of the constitutional violations alleged here"). *But see Trustees for Alaska,* 736 P.2d at 330 (holding that party had standing even though more directly affected potential plaintiff could have sued because that potential party "ha[d] not sued nor [were] there any indications that he plan[ned] to do so"); *Baxley v. State,* 958 P.2d 422, 429 (Alaska 1998) ("The mere possibility that another party might sue, however, does not necessarily justify a denial of standing.").

18. *Kleven,* 853 P.2d at 526.

"avoid the excesses which [the delegates] felt were characterized by the conduct of Senator Joseph McCarthy," including "vilification, character assassination, and an intimation of guilt by association." [19] Witnesses in the investigation, targets of the investigation, or any executive branch employee potentially implicated in Monegan's dismissal could have been appropriate plaintiffs in an action to enforce the constitution's protection.[20] Such persons would be in a position to be vilified, have their characters assassinated, or be found guilty by association during an investigation that was not fair and just. But there is no indication the Keller plaintiffs might personally be exposed to any such abuses of legislative power; they do not claim that they were potential witnesses or investigative targets, or that the investigation would somehow implicate them in Monegan's dismissal.

■ As the French defendants argue, it appears the Keller plaintiffs are attempting to assert the individual rights of potential or "imaginary" third parties. We have never before allowed citizen-taxpayer standing to be used in this way. The Keller plaintiffs assert that we did so in *State v. Planned Parenthood of Alaska*.[21] But we did not discuss citizen-taxpayer standing in that

case. Instead, we held that the plaintiffs had interest-injury standing and third-party standing, both of which are distinct from citizen-taxpayer standing.[22]

As we have noted before, "[g]enerally, a litigant lacks standing to assert the constitutional rights of another." [23] We have recognized third-party standing, but not citizen-taxpayer standing, as an exception to this rule.[24] The Keller plaintiffs do not rely on third-party standing, but invoke citizen-taxpayer standing in attempting to achieve the same result. We decline to allow the use of citizen-taxpayer standing as a substitute for third-party standing here.

**2. Interest-injury standing**

■ The Keller plaintiffs alternatively argue that they had interest-injury standing to sue. To establish interest-injury standing plaintiffs must demonstrate that they have a "sufficient personal stake" in the outcome of the controversy [25] and "an interest which is adversely affected by the complained-of conduct." [26] The degree of the injury need not be great: an "identifiable trifle" is sufficient to establish standing "to fight out a question

**19.** *O'Leary v. Superior Court, Third Jud. Dist.*, 816 P.2d 163, 172 (Alaska 1991).

**20.** Even though the Keller plaintiffs fault the investigation in part because it fails to identify specific "targets" other than the governor, this does not mean, under the circumstances of this case, that they should have standing. We assume that any target revealed later during the investigation's course likewise would be fully capable of raising a claim of constitutional abuse if they thought they were being treated unfairly and unjustly under article 1, section 7.

**21.** *State v. Planned Parenthood of Alaska*, 35 P.3d 30, 34 (Alaska 2001).

**22.** *Id.* at 34. We held that physician-plaintiffs had standing to challenge a statute that required minors seeking abortions to first obtain parental consent. *Id.* In addition to interest-injury standing, the physicians had standing on the separate "universally settled" grounds that "physicians have standing to challenge abortion laws on behalf of prospective patients." *Id.* We did not use the term third-party standing, but cited to similar cases that based standing on third-party standing analysis. *Id.*

**23.** *State ex rel. Dep'ts of Transp. & Labor v. Enserch Alaska Constr., Inc.*, 787 P.2d 624, 630 n. 9 (Alaska 1989) (citing *Falcon v. Alaska Pub. Offices Comm'n*, 570 P.2d 469, 475 n. 20 (Alaska 1977); *Wagstaff v. Superior Court*, 535 P.2d 1220, 1225 (Alaska 1975)).

**24.** *Id.* at 630 n. 9 (citing *Bonjour v. Bonjour*, 592 P.2d 1233, 1241 n. 15 (Alaska 1979) (holding that parent has standing to assert child's constitutional rights); *Falcon*, 570 P.2d at 475 (holding that standing may be conferred on third party when interested party's attempt to vindicate rights would forfeit these very rights)); *see also Gilbert M. v. State*, 139 P.3d 581, 587 (Alaska 2006) (stating that "we have ... 'allowed third party standing where a special relationship exists between the plaintiff and the third party' " (internal citation omitted)).

**25.** *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1040 (Alaska 2004) (quoting *Moore v. State*, 553 P.2d 8, 23 (Alaska 1976)).

**26.** *Alaskans for a Common Language, Inc. v. Kritz*, 3 P.3d 906, 915 (Alaska 2000) (citing *Trustees for Alaska v. State*, 736 P.2d 324, 327 (Alaska 1987)).

of principle." [27] The Keller plaintiffs contend that their complaint "articulates an 'identifiable trifle'" sufficient to confer standing, but they do not specify what their actual injury was.

In a section of their brief unrelated to the issue of standing, the Keller plaintiffs contend that "they and Alaskans face damaged reputations if the investigation continues." They do not develop this argument further, and in oral argument on appeal asserted only that they had citizen-taxpayer standing. It is not self-evident that the investigation was likely to cause the Keller plaintiffs any sort of harm, nor was the nature of any possible harm so self-evident that we must take judicial notice of it. Any claim of interest-injury standing based on reputational harm is not adequately briefed and is therefore waived on appeal.[28]

██ The Keller plaintiffs also seem to argue that they have interest-injury standing because the subpoenaed plaintiffs in the consolidated case had interest-injury standing. But the standing of the Kiesel plaintiffs does not confer standing on the Keller plaintiffs. Each party's standing is evaluated independently, and one party's standing does not confer standing on another.[29] Because the Keller plaintiffs allege no plausible injury to their own interests, they lack interest-injury standing.

Given the Keller plaintiffs' lack of standing to bring this suit, we do not consider whether it was error for the superior court to hold that the Keller plaintiffs' complaint raises nonjusticiable political questions.

## V. CONCLUSION

We AFFIRM the superior court's denial of the Keller plaintiffs' motion for a temporary restraining order and preliminary injunction, and its grant of the French defendants' motion to dismiss.

FABE, Chief Justice, not participating.

WINFREE, Justice, with whom CARPENETI, Justice, joins, concurring.

WINFREE, Justice, with whom CARPENETI, Justice, joins, concurring.

I write separately to emphasize two separate but intertwining aspects of my support for the court's decision.

The constitutional right to fair and just treatment during a legislative investigation is a personal right. The court expressly notes that without a basis for third-party standing, as in this case, a litigant generally lacks standing to assert the personal constitutional rights of another. This strongly suggests to me that although the potential violation of an individual's personal constitutional rights may be a matter of great interest to the public, at least when the individual is the governor, it is not a matter of "public significance" upon which citizen-taxpayer standing may be grounded. Our cases granting citizen-taxpayer standing have involved matters affecting rights and interests beyond a single individual.[1] The matters in this case do not reach the level of "public significance" justifying citizen-taxpayer standing for the Keller plaintiffs; that others are in a better position to bring suit simply confirms my view.

The Keller plaintiffs' oblique connection to the constitutional right to fair and just treatment suggests yet another reason to deny citizen-taxpayer standing. In contrast to the Kiesel plaintiffs' case, the core of the Keller plaintiffs' case does not really concern the protection of individual rights—it concerns a dispute between legislators, in their official capacities, about the power and authority of the Legislative Council and how legislative

---

27. *Ruckle,* 85 P.3d at 1040–41 (quoting *Trustees for Alaska,* 736 P.2d at 327).

28. *See Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) ("[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal." (internal citations omitted)).

29. *See, e.g., State v. Planned Parenthood of Alaska,* 35 P.3d 30, 34 (Alaska 2001) (evaluating as separate questions whether two groups of plaintiffs had standing).

1. *See Trustees for Alaska v. State,* 736 P.2d 324, 328–29 (Alaska 1987) (and cases discussed therein); *Baxley v. State,* 958 P.2d 422, 428–29 (Alaska 1998); *State v. Enserch Alaska Construction, Inc.,* 787 P.2d 624, 630 (Alaska 1989).

investigations should be conducted. This dispute raises legitimate and important questions, but we have long made clear our aversion to court involvement in internal disputes of the legislature.[2] We have stated that courts may intervene to protect against the legislature's infringement of personal rights,[3] but common sense suggests that intervention must be at the instance of one whose individual rights may be violated, not at the instance of legislators who oppose their colleagues' use of legislative power. Concluding otherwise and recognizing citizen-taxpayer standing under these circumstances would allow an exception to swallow our rule of declining to decide political questions arising from internal legislative disputes.

---

**2.** *Malone v. Meekins*, 650 P.2d 351, 356, 359 (Alaska 1982) (declining to intervene in dispute between legislators about election of house officers, stating, among other things: (1) although "the judicial branch of government has the constitutionally mandated duty to ensure compliance with the provisions of the Alaska Constitution, including compliance by the legislature .... we believe that a proper recognition of the respective roles of the legislature and the judiciary requires that the latter not intervene [in the internal organization of the legislature]" and (2) that "except in extraordinary circumstances, as where the rights of persons who are not members of the legislature are involved, it is not the function of the judiciary to require that the legislature follow its own rules."); *Abood v. Gorsuch*, 703 P.2d 1158, 1164 (Alaska 1985) (affirming *Malone v. Meekins* holding regarding non-justiciability of claims between legislators about violations of legislative rules); *Abood v. League of Women Voters of Alaska*, 743 P.2d 333, 339 (Alaska 1987) (same, but reiterating that non-justiciability would not bar review of claim that violation of legislative rules infringed on the rights of a third party).

**3.** *Abood v. League of Women Voters of Alaska*, 743 P.2d at 339; *Malone*, 650 P.2d at 359.